## Case No. 1,511.

### BLANCHARD v. HAVEN et al.

[1 Mason, 346.] [1]

Circuit Court, D. New Hampshire. May Term, 1818.

PRIZE—CAPTURE BY PRIVATEER AFTER ABANDONMENT OF ORIGINAL CRUISE—RESPECTIVE RIGHTS OF OLD AND NEW CREWS TO SHARE IN PRIZE MONEY.

Where a cruise was broken up by the wrongful desertion of the crew, after the privateer returned to her home port in consequence of distress, and the owners were thereby obliged to abandon the cruise, and a new one was undertaken by a crew composed partly of the old crew, and partly of other persons, it was held that the first cruise was completely determined, and that no persons employed in the first cruise, and not in the second cruise, were entitled to shares in prizes made in the second cruise.

In admiralty. This case [by Amos Blanchard against Thomas Haven and others] came on to be heard upon a statement of facts agreed by the parties as follows. On the 7th of November, 1814, the plaintiff entered as prize master on board the privateer Macedonian of Portsmouth, Penn Townsend commander. The agreement between the owners, officers, and crew, contained among others the following articles; viz. "Art. 5. That the cruise shall be where the owners may direct. If they see cause to leave it to the captain, he shall have full power to alter or prolong the cruise; and it shall not be considered as ended until the arrival of said vessel at Portsmouth." "Art. 12. It is agreed that this cruise shall be considered not more than one hundred, nor less than ninety days. The captain is to end the cruise, whenever all his men that can be spared are put on board prizes." "Art. 15. And finally we do by these presents bind ourselves each to the other, for the faithful performance of all and singular the provisions and covenants above specified, in consideration of our becoming the crew of said schooner Macedonian, and it shall be binding upon us to

---

[1] [Reported by William P. Mason, Esq.]

all intents and purposes, as if we had received monthly wages for the time fixed for said cruise." "Art. 8. Should any man desert, or not render himself on board, after verbal notice by the agents, or by publishing the same in one public newspaper, he shall forfeit all his share or shares." The plaintiff signed these articles of agreement, and was entitled by the same to four shares of the crew's moiety of the prizes.

In pursuance of said articles, the said privateer sailed on a cruise in said month of November, being duly commissioned, and with the plaintiff on board. On the 16th of said November, she captured and manned out a prize, and put the plaintiff on board as prize master thereof. After cruising a short time, the said privateer sprung her bowsprit, and put into said Portsmouth to refit, where she arrived on or about the 8th of December, 1814.

On the 8th of December the owners of said privateer met, and passed the following vote, viz.: "Voted, that the agents be requested to inform the officers and crew in some public newspaper, that the first cruise is not considered up, and request them to repair on board when notified." The officers and crew were notified accordingly by the agents to repair on board by a certain day, after which, on the 23d of said December, the said owners again met, and passed the following votes, viz.: "Voted, that whereas only ten officers and four men rendered themselves on board the Macedonian on the day, which they were notified, agreeably to the articles of agreement, and whereas we have by such notification given an opportunity to all purchasers of seamen's shares, to bring forward those of whom they have purchased; and whereas we are compelled in consequence of their not appearing as aforesaid, to give up the first cruise. Therefore, voted, that we now proceed to the choice of officers for the second cruise of the Macedonian." The meeting then proceeded to the choice of officers, when the following gentlemen were unanimously chosen, viz. Penn Townsend, Esq. Captain; Mr. John H. Davis, first lieutenant; Mr. Robert Blunt, second lieutenant. "Voted, that the agents proceed to ship about eighty men, including officers, for the second cruise of the Macedonian."

The facts contained in said votes are true. The same persons chosen for captain and lieutenants for said second cruise, were captain and lieutenants the said first cruise. The agents, pursuant to the vote aforesaid, shipped eighty men, including officers for said cruise, who signed articles of agreement on the 7th of January, 1815; the 5th, 8th, 12th, and 15th articles of which were the same as the articles executed on the 7th of November, aforesaid, which have been recited.

Before the sailing of said privateer on her said second cruise, the plaintiff came to Portsmouth, and the officers and agents were desirous that he should go, but he remained at home, stated that ne considered himself as on parole. On or about the said 7th of January the said privateer sailed on her said second cruise. On her said second cruise she captured several prizes, one within ninety days from the time that she commenced her said first cruise, and the residue after the expiration of the said ninety days.

The facts stated in Joseph Benson's deposition were admitted to be true, and the deposition was made a part of this case; and also the cartel for the exchange of prisoners of war between Great Britain and the United States. It was also admitted that the votes of the proprietors were known to Blanchard. The deposition of Benson was as follows: I, Joseph Benson, do testify and say that I was a seaman on board the privateer Macedonian, on her first cruise; of which privateer Penn Townsend was commander. That a few days after the said privateer was out, she captured a prize, and that Amos Blanchard was put on board the prize as prize master, and this deponent as one of the prize crew. That on the third day after we were put on board the prize, we were recaptured by the Newcastle, British frigate. Said Blanchard and myself were put on board the Newcastle, where we remained three weeks, when Blanchard was put on shore at Cape Cod. That a day or two before Blanchard was put on shore, Blanchard told the deponent that he, Blanchard, was going ashore, and that he would try to get the rest clear. That he, Blanchard, was going ashore to carry some clothes and money to a British midshipman, who was a prisoner in the hands of the United States forces at Salem, who had been recaptured in going on shore in a boat. On the morning of the day when Blanchard was put on shore, I saw Captain Stewart, the commander of the Newcastle, deliver to Blanchard some clothes and a letter; and heard him tell Blanchard to deliver the clothes and money himself· to the said midshipman, and not intrust them to any body else. And he also told Blanchard, that he was not to take up arms against the English flag during the war, and Blanchard told him, that he should not, for he could live at home without it. I further testify, that at the time Blanchard was sent on shore, there was a Mr. Chapman on board the Newcastle, a prisoner, who had been a prize master in an American ·prize, and recaptured, who was desirous of going on shore, but Captain Stewart refused, saying he did not make the war, and would not make peace; and that he should not let Blanchard go, but to carry the clothes and money to the midshipman. Chapman was sent to Halifax, and detained till the close of the war. I was also sent to Halifax, and detained till the close of the war. On the same day that Blanchard went ashore, we were put on board a vessel to be sent to

Halifax. Blanchard was sent ashore in one of the Newcastle's boats.

The questions submitted to the court upon the above facts are: 1st. Whether the plaintiff is entitled to four shares of the proceeds of all the prizes captured by said privateer after the said 7th of January, which are to be distributed among the crew? 2dly. Whether the plaintiff is entitled to share as aforesaid, in the prize captured as aforesaid, after the said 7th of January, and within ninety days from the commencement of the said first cruise? If the court should be of opinion that the plaintiff is entitled to share in the whole, or a part of the prizes captured after the said 7th of January, then judgment accordingly is to be rendered for the plaintiff, for such sum as shall be agreed upon by the parties, or as a commissioner or commissioners, to be appointed by the court, shall report in default of such agreement. If the court should be of opinion that the plaintiff is not entitled to share as aforesaid, judgment is to be rendered against him, as in case of nonsuit.

Pitman, for the plaintiff, contended that the first cruise was wrongfully broken up by the original crew; and that the second cruise was to be considered so far as respected that portion of the crew who were parties to the shipping articles for the first cruise, as a mere continuation of the first cruise. That the coming into Portsmouth on account of distress, did not legally put an end to the first cruise; and that the plaintiff, not having been concerned in the wrongful act of the crew in deserting the privateer, was to be considered as a prize master, entitled to share in the prizes made during the second cruise; which, upon the ground already stated, was but a continuance of the original cruise. And he cited The Brutus [Case No. 2,060].

E. Cutts, Jr., was to have argued for defendants.

STORY, Circuit Justice. This case differs in several important particulars from that of The Brutus [Case No. 2,060]. There the cruise was attempted to be broken up in a foreign port by the officers and crew, without the consent of the owners of the privateer. And it was held, that the officers and crew could not set up their own wrongful act as a dissolution of the cruise. It was material also in that case, that the homeward voyage was within the scope of the original articles; and the cruise was in fact continued by the original crew. It is true, that by the return of the privateer to Portsmouth in distress, the cruise of the Macedonian was not legally terminated. But it was in fact broken up by the desertion of the crew. The owners did not concur in that wrongful proceeding. They acted with good faith; and certainly had a right to employ their own vessel on a new cruise, when the former cruise was entirely abandoned by the officers and crew. But even if the owners had wrongfully put an end to the cruise at Portsmouth, I do not know, that it would have helped the plaintiff. He might then have been entitled to an action for damages for the injury sustained by him by such wrongful act. But it seems to me, that the owners have a right to the possession and use of their own vessel; and that from the nature of the service, they have a right to break up a cruise in the home port, taking the consequences of such act, if it be a breach of any covenant, into which they have entered. Suppose the case of an agreement in the nature of a charter-party for a voyage, are not the owners at liberty to prevent their vessel from proceeding on the voyage, taking their chance of an action for the breach of their contract? Does such a contract devest the legal ownership of the property during the voyage? But in the present case, it is conceded, that the owners are in no default. The first cruise was in fact terminated. New engagements were entered into for a new cruise by parties, who were competent to make such engagements. How then can the court say, that the second cruise was a continuation of the first? The first cruise was abandoned, wrongfully indeed, by the original crew, but still in point of fact and law completely abandoned.

This is an attempt to claim prize proceeds, earned in the second cruise, to which the plaintiff was no party, either in law or in fact. He entered into no contract with reference to it; nay, he declined having any thing to do with it. It is, in fact, an action for damages, for the illegal act of breaking up the first cruise, in the shape of an action for money had and received. As to the shares of the owners and the new crew engaged in the second cruise, it is admitted, that the plaintiff is not entitled to claim any deduction. But he claims to deduct from the shares of each of the crew shipped on the first and second cruises, an amount equal to the shares he would have been entitled to, if the prizes had been made in the first cruise, or if the first cruise had not been wrongfully broken up by their desertion. Undoubtedly by their desertion they forfeited all claim to the prizes captured on the first cruise. And it may be, that an action for damages lies against them in favor of the plaintiff. But certainly there is no specific claim or lien on their property earned in the second cruise, to respond for those damages. Suppose, instead of shipping in the Macedonian a second time, they had shipped in some other privateer, can there be any pretence, that the prize money earned in such a cruise could have been held to respond these damages? In what possible way could it be considered as money had

and received to the use of the plaintiff? In point of law, I do not distinguish between the case put and the case at bar. The cruises were as distinct, as if they had been made in different privateers.

On the whole, the district judge and myself are clearly of opinion, that the action cannot be sustained. We adhere to the case of The Brutus [supra] and feel no inclination to abandon any of its positions. But this case is not governed by any principle decided in that. Let the plaintiff be nonsuited according to the agreement of the parties.